MARBELITE CORPORATION OF AMERICA, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 65942, 70552. Promulgated April 4, 1934.

*Frank Mergenthaler, Esq.*, for the petitioner.
*Elden McFarland, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: In these cases taxpayer asks redetermination of deficiencies of $6,992.97 and $501.56 for the years 1929 and 1930, respectively. As developed by the hearing, there is but one question: Was petitioner affiliated with another corporation during the period March 16, 1928, to February 19, 1929? Other questions were either abandoned or will be governed by the decision on the principal question.

The facts, stipulated in part and in part presented by oral evidence, are as follows:

The petitioner is a corporation, organized under the laws of the State of Delaware, with its principal place of business in Los Angeles, California. In the years 1929 and 1930 it was engaged in the business of manufacturing and selling ornamental cement street lighting standards. The chief outlet for its products was through manufacturers and contractors engaged in installing public improvements, and action was generally required on the part of legislative bodies of municipalities to approve public improvement projects in which the products of the taxpayer were used.

The petitioner, in the early part of 1928, organized a corporation under the laws of the State of Illinois, called "The Marbelite Corporation of Illinois", with an authorized capital of common voting stock consisting of 4,000 shares of a par value of $100 per share, for the purpose of manufacturing and selling the products of the taxpayer in the States of Illinois, Wisconsin, Michigan, and Indiana. The outlet for the products of the Illinois corporation was similar to that of the petitioner, i.e., through municipal improvement projects.

On March 16, 1928, the petitioner entered into a written contract with Bassler, Bippus & Rose, a law firm practicing in Chicago, which recited that Bassler, Bippus & Rose had rendered valuable services to the petitioner and that the petitioner desired to pay therefor in stock instead of cash and provided that the petitioner would cause the Illinois corporation to issue to Bassler, Bippus & Rose a certificate of stock for 1,000 shares of its stock, par value $100,000, and that the certificate of stock would have written upon it the following statement:

This certificate of stock is issued in accordance with the terms of an agreement between the Marbelite Corporation of America and the parties named

in said certificate, and all rights which may accrue under this certificate or by virtue of its issuance, are subject and subordinate to the terms and conditions of the contract hereinbefore mentioned.

The contract further provided that if the total business done by the Illinois corporation within the States of Illinois, Michigan, Wisconsin, and Indiana should amount to a sum less than $1,000,000 within a five-year period from the date of the contract, Bassler, Bippus & Rose would endorse and return to the petitioner the certificate of stock so issued.

Bassler, Bippus & Rose had rendered no "valuable services" to petitioner prior to the date of the contract, excepting certain legal services for which they had been otherwise compensated.

Prior to the execution of the agreement mentioned hereinbefore, the Illinois corporation, out of its total authorized capital stock of 4,000 shares, had issued to the petitioner 2,995 shares of its common par value capital stock, and it was the owner of all the outstanding stock of the Illinois corporation, including five shares thereof issued to its directors as qualifying shares.

Thereafter on March 16, 1928, 1,000 of the 2,995 shares of stock theretofore issued to the petitioner were duly transferred to Bassler, Bippus & Rose, pursuant to the terms of the petitioner's contract with them. The certificate so issued by the Illinois corporation to Bassler, Bippus & Rose bore the statement set forth in the above agreement of March 16, 1928, and certified that the partnership of Bassler, Bippus & Rose was the owner of 1,000 shares of the capital stock of the Illinois corporation. No stock other than the 3,000 shares mentioned above was ever issued by the Illinois corporation.

On March 16, 1928, the Illinois corporation entered into a written contract with Bassler, Bippus & Rose which recited that:

WHEREAS, the party of the second part is in a position to, by reason of its friends, acquaintances and associates, render valuable services to the party of the first part in the sale and disposal of objects manufactured by it from concrete;

and contained the following material provisions:

FIRST: That the party of the second part will use its best endeavors to obtain business for the party of the first part, will aid the party of the first part in the sale and disposal of lighting standards and other objects manufactured by it from concrete, and will not aid or assist any company that is a competitor of first party in the sale or disposal of any objects that might be manufactured, sold or disposed of in competition with the articles manufactured, sold and disposed of by the party of the first part.

SECOND: That in consideration of the services so to be performed by the party of the second part, the party of the first part agrees to pay to the party of the second part, monthly, an amount equal to three per cent (3%) of the amount collected by it from the sale and disposal of the articles manufactured by it for a period of five years from date hereof.

The two contracts referred to were by mutual agreement canceled on February 19, 1929, the stock was endorsed and returned to petitioner, and the firm of Bassler, Bippus & Rose was paid $5,750.

Petitioner contends that the contracts of March 16, 1928, though entirely innocent on their face, were in fact nothing more than "logrolling contracts", illegal as contrary to public policy and void *ab initio*. On this premise it is argued that Bassler, Bippus & Rose never acquired title to the 1,000 shares of stock of the Illinois corporation; that the petitioner was at all times the owner; and, consequently, was affiliated with the Illinois corporation and entitled to file consolidated returns.

It is thus readily perceived that, reduced to plain words, taxpayer seeks to plead in this litigation with the Government over taxes its own participation in an illegal contract to avoid the consequences of such contract on its tax liability. There is a complete barrier to such action. As stated by the Court of Appeals for the Ninth Circuit in *Johnston* v. *McLaughlin*, 55 Fed. (2d) 1068:

It is a fundamental principle of law that no person can take advantage of his own wrong. The appellant here bases his action upon the wrong committed by the Du Pont Milling & Sales Corporation acting through its duly appointed officers. This cannot be done. If an individual taxpayer had made the tax return showing an income never actually received for the purpose of deceiving his present or prospective creditors, he could not be heard to urge in a suit against the government that he had made a false return in order to defraud his creditors. The rule is the same with reference to a corporation.

Respondent has given full faith to the transfer of stock to Bassler, Bippus & Rose and has denied affiliation. We approve his action and affirm the deficiencies.

*Decision will be entered for the respondent.*